IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-00060-01-CR-W-DW |
| ) | |
| CHRISTOPHER J. SCROGGINS, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Scroggins' Motion to Suppress Illegally Obtained Evidence (doc #23). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On February 25, 2009, the Grand Jury returned a one count indictment against defendant Scroggins. The indictment charges that on November 26, 2008, defendant Scroggins, having been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a firearm.

On January 19, 2010, an evidentiary hearing was held on defendant's motion to suppress. Defendant Scroggins was represented by Assistant Federal Public Defender Anita Burns. The Government was represented by Assistant United States Attorney David Barnes. The Government called Officer Mark McKenney and Officer Michael Livers of the Kansas City, Missouri Police Department as witnesses. The defense called no witnesses to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. Officers Mark McKenney and Michael Livers were on patrol the evening of November 26, 2008. (Tr. at 6-7, 28) Officers McKenney and Livers testified and the dash-cam video showed that defendant Scroggins failed to use his signal during

a lane change while driving on Troost. (Tr. at 7, 29; Defendant's Ex. 1[1]) Even before Officer McKenney observed the traffic violation, he had run the tags on the vehicle and knew that there were warrants associated with the tags. (Tr. at 7-8)

2. Defendant Scroggins was pulled over. (Defendant's Ex. 1) The officers approached Scroggins' vehicle and Officer Livers advised Scroggins that the reason he was stopped was because there were warrants that came back to the vehicle and because he had failed to use his blinker. (Tr. at 8; Defendant's Ex. 1 and Ex. 2 at 2) Scroggins acknowledged that the warrants were his. (Tr. at 8; Defendant's Ex. 1 and Ex. 2 at 2) As soon as Scroggins acknowledged that the warrants were his, the officers made the decision to place him under arrest and Scroggins was handcuffed. (Tr. at 8-9, 30) Scroggins was not told he was under arrest. (Tr. at 15) Scroggins was told that just because he was stopped, it did not mean he was going to jail. (Government's Ex. 1; Government's Ex. 2 at 2-3) The officers told Scroggins this so that he would remain calm. (Tr. at 24, 46) Officer McKenney testified that subjects have tried to fight or run in the past when he has told them immediately that they are under arrest. (Tr. at 24)

3. Officer McKenney testified that based on defendant Scroggins' demeanor, McKenney thought there might be contraband in the vehicle. (Tr. at 9) Scroggins turned around several times while talking with Officer Livers to see what Officer McKenney was doing by the vehicle. (Tr. at 9; Defendant's Ex. 1)

4. Officer McKenney testified that in November of 2008, the standard operating procedure when a driver of a vehicle was arrested was to tow the vehicle. (Tr. at 10) Officer McKenney testified that about 90 percent of the time he and his partner would have the vehicle towed when the driver was arrested and the vehicle was on a public street. (Tr. at 10) Prior to towing a vehicle, officers would perform an inventory search of the vehicle. (Tr. at 10) Officer McKenney testified that at that time, it also was standard operating procedure to perform a search of the vehicle incident to the driver's arrest. (Tr. at 10)

5. Upon defendant Scroggins' arrest, Officer McKenney immediately started searching the vehicle. (Tr. at 10) Officer McKenney testified that he knew the vehicle was going to be towed. (Tr. at 10) Officer McKenney recovered a loaded firearm from a hidden compartment under the radio on the driver's side. (Tr. at 11; Government's Ex. 1) The compartment was within arm's reach of the driver. (Tr. at 11)

6. Although the officers knew immediately that the vehicle was going to be towed, the officers led defendant Scroggins to believe that they were checking with robbery to see if the vehicle needed to be towed. (Tr. at 10, 12, 30; Defendant's Ex. 1; Defendant's Ex. 2 at 9-11) The reason the officers led Scroggins to believe that the vehicle might not be towed was to keep him calm and level-headed. (Tr. at 12, 30-31) The officers testified that they have been involved in instances where officers immediately have told a party that they were going to tow the vehicle and the party has reacted violently. (Tr. at 12, 31) Officer Livers testified that there have been injuries to officers and subjects as well as additional charges. (Tr. at 31) Officer McKenney testified that it is safer for the officers and the party if the party is led to

---

[1]Defendant's Exhibit 1 is the video from the police dash-cam. Defendant's Exhibit 2 is a transcript of the video.

believe that there is a chance the vehicle will not be towed. (Tr. at 12-13)

7. According to Officer Livers, as soon as police activate their lights to pull a subject over, the subject is calling someone to say, "I'm getting pulled over, come here," and the subject's family will show up at the scene. (Tr. at 31) Officer Livers testified that things have gotten out of control several times when family members have arrived at the scene. (Tr. at 32) In this particular case, the family members that responded were calm and respectful. (Tr. at 32)

8. The robbery unit was called because they always want to be notified if there is a possibility of a felon in possession. (Tr. at 13) The robbery unit has access to computers that the patrol officers do not have to make sure the subject is a felon. (Tr. at 13) The robbery unit confirmed that defendant Scroggins was a prior felon. (Tr. at 32)

9. Although defendant Scroggins was asked some questions about the firearm at the scene, he was not given his Miranda warnings. (Tr. at 20, 40) Officer Livers admitted that he should have read Scroggins his Miranda warnings before asking him about the firearm. (Tr. at 40-41)

10. Officers McKenney and Livers testified that the Kansas City Police Department Tow Policy gives officers discretion on whether or not to tow a vehicle. (Tr. at 20-21, 43) Defendant Scroggins was not given an option as to whether or not his vehicle would be towed. (Tr. at 21) Despite Scroggins' requests, the vehicle was not released to Scroggins' mother or his friend who each showed up at the scene. (Tr. at 22-23, 43) Officer McKenney testified that the vehicle was not legal on the roads as the tags on it were not registered. (Tr. at 21) Officer Livers testified that he absolutely believes that the Kansas City Police Department Tow Policy in effect in November 2008 authorized the officers to order a tow for a car that has warrants, occupied by someone who is a felon, parked on a public street. (Tr. at 47)

11. While defendant Scroggins never tried to fight or run or use any threatening words towards the officers, Officer McKenney believes that the officers' strategy of keeping Scroggins in the dark as to whether or not he was going to jail and whether or not his vehicle was going to be towed contributed to Scroggins remaining calm and respectful. (Tr. at 26-27, 32)

12. Officer Livers testified that defendant Scroggins was initially arrested for his city warrants, but the arrest was later upgraded to a felon in possession. (Tr. at 48)

### III. DISCUSSION

Defendant Scroggins seeks to suppress the .44 caliber revolver recovered during the warrantless search of his vehicle on November 26, 2008. (Motion to Suppress Illegally Obtained Evidence at 1) In support of his motion, defendant argues that the search was conducted as a search incident to arrest. (Id. at 3) In Arizona v. Gant, 129 S.Ct. 1710 (2009), the United States Supreme Court found unconstitutional a search incident to arrest when the arrestee has been secured and

3

cannot access the interior of the vehicle. (Motion to Suppress Illegally Obtained Evidence at 3-4) Defendant contends that since he had been removed from the vehicle and handcuffed prior to the search, the search incident to arrest was unconstitutional. (Id. at 4) Defendant further argues that the search cannot be justified as an inventory search as there was no discussion about towing the vehicle until after the firearm was seized. (Id. at 3-4) Finally, defendant argues that an inventory search would not have been necessary as the vehicle could have been released to defendant's family who arrived at the scene. (Id. at 5)

The initial stop of defendant Scroggins' vehicle was lawful. As the Eighth Circuit Court of Appeals has observed, "a traffic violation–however minor–creates probable cause to stop the driver of the vehicle." United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000). Prior to pulling the vehicle over, the officers observed the vehicle change lanes without signaling. (See Fact No. 1, supra) In addition, even before the officers observed the traffic violation, they had run the tags on the vehicle and knew that there were warrants associated with the tags. (See Fact No. 1, supra) Both the traffic violation and the warrants which came back on the tags provided probable cause to stop the vehicle.

Upon being stopped, defendant Scroggins immediately admitted that the warrants were his. (See Fact No. 2, supra) Both officers testified that as soon as Scroggins made this admission, Scroggins was handcuffed and they considered him to be under arrest. (See Fact No. 2, supra) For officer safety concerns, the officers did not advise Scroggins that he was under arrest at that time. (See Fact No. 2, supra) In addition, upon Scroggins' arrest, the officers testified that they immediately decided the vehicle would be towed pursuant to standard operating procedures. (See Fact Nos. 4-6, supra) Again, for officer safety concerns, the officers did not advise Scroggins right away that the vehicle would be towed. (See Fact No. 6, supra)

The Court finds that the officers had probable cause to place defendant Scroggins under arrest. Given the state of the law at the time, the search of the vehicle which followed was

permissible both as a search incident to arrest[2] and as an inventory search.[3] The Court acknowledges that a search conducted today with this set of facts would not be appropriate as a search incident to arrest given the Supreme Court's decision in Arizona v. Gant, 129 S.Ct. 1710 (2009). However, various courts have found that for searches conducted prior to the Gant decision, the previous state of the law controls as officers were operating in good faith reliance on the law as it existed prior to Gant. See United States v. McCane, 573 F.3d 1037, 1044 (10th Cir. 2009)("a police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct"); United States v. Lee, 2009 WL 3762404, *2 (W.D. Mo. Nov. 10, 2009)("the good faith of officers relying on pre-Gant precedent supports a search otherwise indefensible under Gant"); United States v. Allison, 637 F.Supp.2d 657, 672 (S.D. Iowa 2009)(no suppression where search made incident to arrest adhered to and was made in objectively reasonable reliance upon the Eighth Circuit doctrine controlling at the time).

Given the Court's finding that the initial stop of the vehicle, the subsequent arrest of defendant Scroggins and the search (either incident to arrest or as an inventory search) were proper, there is no basis for suppressing the firearm.

---

[2] See New York v. Belton, 453 U.S. 454, 460 (1981)("we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"); United States v. Searcy, 181 F.3d 975, 979 (8th Cir. 1999)(after driver of vehicle admitted to officer that his license was suspended, driver was arrested and vehicle lawfully searched incident to arrest). In this case, defendant Scroggins was under arrest for the outstanding warrants. (See Fact No. 2, supra)

[3] A warrantless inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). As set forth above, defendant Scroggins had been placed under arrest. (See Fact No. 2, supra) In addition, Officer McKenney testified that the vehicle was not legal on the roads as the tags on it were not registered. (See Fact No. 10, supra) Both officers testified that they made the decision to tow the vehicle as soon as Scroggins was arrested. (See Fact No. 6, supra) Officer McKenney testified that it is standard operating procedure to inventory a vehicle prior to towing it. (See Fact No. 4, supra) The Court finds that the inventory search was conducted pursuant to standardized police procedures and that it was not done in bad faith or for the sole purpose of investigation.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Scroggins' Motion to Suppress Illegally Obtained Evidence (doc #23).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                      */s/ Sarah W. Hays*
                                                      SARAH W. HAYS
                                    UNITED STATES MAGISTRATE JUDGE